# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOHN R. CRAWFORD,** | § | |
| **(TDCJ No. 02300138),** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:20-cv-1119-O** |
| | § | |
| **LEE PITTS, Chief,** | § | |
| **Lakeside Police Department, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER
## RESOLVING MOTIONS TO DISMISS

This case involves a pro se inmate plaintiff named John Crawford, and several police officer defendants, related to Crawford's claims arising from his arrest in Lakeside, Texas. After service was authorized upon several defendants, all of those defendants appeared through the filing of separate motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court finds that the respective motions to dismiss under Rule 12(b)(6) should be **GRANTED**, and all plaintiff John Crawford's remaining claims **DISMISSED** with prejudice.

## I.      BACKGROUND/PROCEDURAL HISTORY

Crawford initiated the case by filing a form civil rights complaint. Compl., ECF No. 1. In the complaint, Crawford, now an inmate at the TDCJ Leblanc Unit, complains that on October 31, 2018, during a detention and arrest of him in Lakeside, Texas, he was "subjected to official oppression, excessive use of force, illegal search and seizure, and unlawful arrest, as well as denial of on-site medical attention." Compl. 5, ECF No. 1. Crawford named multiple defendants: Town of Lakeside Police Chief Pitts ("Pitts"); Town Manager Norman Craven ("Craven"); Officer

1

Richard Huitt ("Huitt"); Tarrant County Sheriff's Department employees Lieutenant Richard Foust ("Foust"), and deputies Kelly Bloom ("Bloom") and Ralph Rodriguez ("Rodriguez"); Fort Worth Marshal Sergeant W. Wedel ("Wedel"); Officer R. Salazar ("Salazar"); and four unnamed law enforcement officers. *Id.* at 3-4. ECF No. 1. Crawford alleges in the complaint that the named defendants "knew and were aware, having gross negligence, intentions, and conscious, deliberate indifference to my personal present and future health and safety causing unnecessary, excessive serious personal bodily harm" amounting to violations of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. *Id.* at 5. In the relief section of the form complaint, Crawford seeks "compensation for physical injuries and mental anguish suffered as a result of the unlawful and unconstitutional actions of the Defendants as well as full payment of all medical expenses." *Id.* at 6.

The Court ordered Crawford to file answers to specific questions in the form of a more definite statement ("MDS"), and he filed an MDS. ECF Nos. 6, 7. Under authority of the screening provisions of 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B) applicable to this case, the Court dismissed Crawford's claims against Norman Craven and against the four unknown (John Doe) officer defendants, but authorized Crawford to obtain service of process of his remaining claims upon seven defendants. ECF Nos. 10, 11, and 12.

## II.   INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS UNDER RULE 12(b)(6)

Each of those seven defendants have now appeared in this action by filing separate motions to dismiss: Tarrant County Sheriff's Office deputies Bloom, Rodriguez, and Lieutenant Foust on July 16, 2021 (collectively the "TCSO Defendants") (ECF No. 26); Town of Lakeside Police Chief Pitts and Officer Huitt on July 20, 2021 (collectively the "Lakeside Defendants") (ECF No. 28); and City of Fort Worth Officer R. Salazar and Sergeant W. Wedel (collectively the "Fort Worth

2

Defendants") on July 22, 2021 (ECF No. 31). The TCSO and Lakeside Defendants each filed an appendix in support. ECF Nos. 27 and 29. Crawford filed responses to the motions to dismiss, and the defendants filed their respective replies  ECF Nos. 36, 37, 39, 40, 41, and 42.  Crawford also filed documents considered as sur-replies. ECF Nos. 43, 45. The motions to dismiss under Rule 12(b)(6) are ripe for review.

> **A.    Applicable Law and Matters Considered in Resolving Motions to Dismiss**

> 1.    Rule 12(b)(6) Standard

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is generally viewed with disfavor. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997). The court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). Rule 12 must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff must plead specific facts, not mere conclusory allegations, to avoid dismissal.  *See Schultea v. Wood*,  47 F.3d 1427, 1431 (5th Cir. 1995)(en banc); *see also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss") (citation omitted). Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As the Supreme Court explained in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face"

3

and his "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), to the extent the Court concluded therein that a plaintiff can survive a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief"). Then, in *Ashcroft v. Iqbal,* the Supreme Court clarified that review of a 12(b)(6) motion is guided by two principles: one, a court must apply the presumption of truthfulness only to factual matters, and not to legal conclusions; and two, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678-79. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The Supreme Court noted that courts should not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). If the pleadings fail to meet the requirements of *Iqbal* and *Twombly,* no viable claim is stated and the pleadings are subject to dismissal.

2.   Court's Review of Public Records Related to Crawford's Charges and Convictions

As noted above, the defendants have provided an appendix of exhibits made up of copies of records from the Town of Lakeside and from the Tarrant County District Clerk. Tarrant County App., ECF Nos. 27, 27-1, and 27-2; Lakeside App., ECF Nos. 29, 29-1, and 29-2. These documents constitute public records referenced in Crawford's pleadings, which are central to his claims. *See* MDS 5-7, ECF No. 7 (quoting Officer Huitt's report and referencing Lakeside "police reports" and the judgments of conviction in the state criminal cases). "[C]ourts must consider the complaint

4

in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference . . .. " *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Myers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (per curiam). When a plaintiff's chronology of events is incomplete, courts can "rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Burns v. Mayes*, 369  F. App'x 526, 527 n.4 (5th Cir. 2010) (quoting *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995) ("Federal courts are permitted to refer to maters of public record when deciding a 12(b)(6) motion to dismiss") (internal citation omitted)); *accord Bauer v. Texas*, 341 F.3d 352, 362 n.8 (5th Cir. 2003) (taking judicial notice of public records not in dispute); *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1277 n.33 (5th Cir. 1978) (permitting judicial notice of a court's own records or those of the inferior courts).

The record exhibits in the Tarrant County appendix are not being provided as evidence but to assist the Court with accessing public records, of which the Court may take judicial notice. *See* Fed. R. Evid. 201. Therefore, the Court hereby takes judicial notice of all record exhibits within the Tarrant County appendix (ECF Nos. 27, 27-1, and 27-2).[1] *See* Fed. R. Evid. 201(b)(2) and 201 (c) (2); *see also Nelson v. Cauley*, No. 3:04-cv-828-G, 2005 WL 221349, at *3 n.7 (N.D. Tex. Jan 7, 2005) ("In this case, the defendants have provided various public records relating to plaintiff's state trial convictions. Because the Court has only considered the pleadings and matters of public record, there is no need to consider dismissal under summary judgment standards"), *rep. and rec.*

---

[1] As the later-filed Lakeside appendix contains all of the same records as provided in the Tarrant County appendix, the Court will consider and refer to only the public records in the Tarrant County appendix. ECF Nos. 27-1, pp. 1-12, ECF No. 27-2, pp. 1-37. The Court will cite to the page numbers assigned by CM/ECF.

*adopted*, 2005 WL 383706 (N.D. Tex. Feb. 16, 2005); and *Garrett v. Comcast Communications, Inc*., 3:04-cv-0693-P, 2004 WL 2624679, at *2 (N.D. Tex. Nov. 17, 2004) (court may consider public records attached to a motion to dismiss without conversion to a motion for summary judgment.)

**B.     Crawford's Claims and Causes of Action and Public Records**

The gist of Crawford's pleadings is that he was falsely arrested, subjected to an excessive use of force, and denied medical care at the scene. He contends this was a violation of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. Compl., ECF No. 1. In the next paragraph of his complaint, quoted verbatim, Crawford makes reference to all defendants generally:

> Officials of named defendants, on claim, knew and were aware. Having gross negligence, intentions and . . . conscious, deliberate indifference to my personal, present and future health and safety causing unnecessary, excessive, serious personal bodily harm by recklessly disregarding and failing their . . . fiduciary duty to embrace policy, procedures, regulations and denial of medical attention from said unconstitutional violations of my constitutional rights, specifically the IV, V, VI, VIII, and XIV Amendments.

*Id.* With regard to each defendant, Crawford recites the following specific allegations in his complaint and more definite statement, which the Court quotes verbatim:

**Chief Lee Pitts**

> Official oppression, denial of medical attention. Compl. 4, ECF No. 1
>
> After I drove away from my Mother's residence as per request of Officer Huitt I got about a block from the residence and stopped. I began broadcasting live on Facebook and stated that officers were forcing me to leave my lawful place of residence and I turned my vehicle around and returned to the street in front of my Mother's house. Officer Huitt can be seen in the Facebook video walking toward my truck on the passenger side and I asked him "Sir have I broken the law or done anything wrong today?" "No" he replied. At that moment, while I was still conversing with Huitt I see a hand reach inside my truck from the open driver's

window and seize my truck keys, turning the vehicle off and removing the keys from the ignition. I react by saying "Sir what are you doing?!" and turning the Phone in that direction but the phone was taken from my hand by [Pitts] who also was the person who seized my keys, and the broadcast stopped at that moment.

. . .

I asked [Pitts] "What are you doing?" He said "get out of the truck, you should have left when you had the chance!" I said "I still have the chance, just give me my keys back and I'll leave." he said "No, you're under arrest." I asked "for what ?  Your co-worker just said that I haven't done anything wrong or broken the law!" he replied "We'll think of something" Also at points during the following incident [Pitts] struck me about the head and face with his closed fists.

Furthermore at the end of the incident while I was sitting in the back of Officer Huitt's patrol unit Medstar arrived on the scene and [Pitts] accompanied the medic to the window of the cruiser to look at me. I told the medic through the window that I had been tased multiple times and was having chest pains. The medic said something to [Pitts] and [Pitts] responded that they were not going to take me out of the cruiser and directed the medic to leave.

After this [Pitts] told officer Huitt, who was behind the wheel of his cruiser not to worry about taking me to the hospital because I had warrants so to take me to Tarrant County Jail. Officer Huitt requested a warrant check over the radio and dispatch returned that there were no active warrants for my arrest. Officer Huitt the [sic] proceeded to drive me to JPS Hospital in downtown Fort Worth Texas and afer being directed by staff on the 10th Floor mental health facility to take me to the emergency room to be treated due to my having been tased, still having some taser probes in my body, and other injuries. He then took me back to the 10th floor mental health ward and left me in their custody. I was released by mental health doctors to my Mother's care the following day on 11-1-2018.

[Pitts] actions in seizing my keys and phone violated my IV Amendment rights to be secure from unreasonable searches and seizures of my property. His declaration that I was under arrest and subsequent statement that "we'll think of something" when asked for what reason violated my IV Amendment rights also in that he declared his intent to seize my person without cause. And his striking of me with closed fists violated my VIII Amendment rights protecting me from cruel and unusual punishment. Lastly his seizure of my phone, keys, and attempted seizure of my person violate my XIV Amendment rights protecting me from the deprivation of my life, liberty, or property without due process of law.

MDS 1-3, ECF No. 7.

**Lieutenant Richard Foust**

7

[Foust] was deliberately indifferent to my health and safety, disregarded my U.S. constitutional rights. Compl. 4, ECF No. 1

[Foust] was well aware of the illegal seizure of my property by [Pitts] and the attempted unlawful arrest of my person by [Pitts] and failed to exercise his authority as an [sic] civil servant to curtail [Pitts's] violations of my constitutional rights. Also, at points during the insuring altercation [Foust] struck me with closed fist causing me physical bodily harm. And violated my VIII and XIV Amendment rights with said physical force.

MDS 3, ECF No. 7.

**Sergeant W. Wedel**

[Wedel] was deliberately indifferent to my health and safety and disregarded my U.S. constitutional rights.  Compl. 4, ECF No. 1.

[Wedel] was aware of and failed to halt the violation of my constitutional rights by [Pitts] and after I complied with [Pitts's] commands to exit my vehicle and was standing with my back against the bed of my truck, hands held above my head with empty palms facing toward the officers (all of whom were arrayed in a semi-circle around me by this point) but failing to obey commands given by officers to turn around and put my hands on the truck for fear of being shot, and requesting that officers get my mother so that I could speak with her. [Wedel] deployed his taser, striking me with it while my hands were raised in the aforementioned manner. Also, at other points during the ensuing altercation [Wedel] struck me with closed fist. These actions violated my IV, VIII and XIV amendment Rights.

MDS 4, ECF No. 7

**Officer Richard Huitt**

[Huitt] was deliberately indifferent to my health and safety and disregarded my U.S. constitutional rights. Compl. 4, ECF No. 1

[Huitt]who was first to arrive on the scene and speak with me, was advised by dispatch that my Mother called because she was concerned that I was having an "Schizophrenic episode" and that I had just been released from the mental hosptial only a few days prior failed to follow established procedure for police interactions with mentally ill persons to contact qualified personnel to assist with the situation. Also, after just having told me on video that I had done nothing wrong and hadn't broken any laws, [Huitt] failed to exercise his authority as an peace officer to prevent or halt [Pitts's] violation of my constitutional rights. Furthermore [Huitt],

8

by his own admission, also deployed his taser, striking me in the upper torso, while my hands were raised above my head, causing me extreme physical pain. Later [Huitt] also used his taser to "stundrive" me multiple times. [Huitt] also blatantly lies in his official Police Report stating that Medstar was allowed to treat me and even goes so far as to state that "the medics removed one probe attached to his shirt and released him." He also omits other things from his report altogether. [Huitt's] actions directly violated my VIII and XIV Amendment rights and his falsification of official documentation which was later used as a charging instrument against me violated my VI and V Amendment rights.

MDS 4-5, ECF No. 7.

**Deputy Kelly Bloom**

[Bloom] was deliberately indifferent to my health/safety and disregarded my U.S. constitutional rights. Compl. 3, ECF No. 1.

[Bloom] failed to stop or prevent the actions of the aforementioned defendants which violated my aforementioned constitutional rights. Also, at point during that ensuing altercation [Bloom] struck me with closed fists. These actions violated my VIII and XIV Amendment rights.

MDS 5, ECF No. 7

**Deputy Ralph Rodriguez**

[Rodriguez ] was deliberately indifferent to my health/safety and disregarded my U.S. constitutional rights. Compl. 3, EF No. 1.

[Rodriguez] failed to stop or prevent the violation of my constitutional rights by the aforementioned defendants and struck me with closed fists violating my VIII and XIV amendment rights.

MDS 5, ECF No. 7.

**Officer Salazar**

[Salazar] was deliberately indifferent to my health and safety and disregarded my U.S. constitutional rights. Compl. 3, ECF No. 1.

[Salazar] failed to stop or prevent the violation of my constitutional rights by the aforementioned defendants and struck me with closed fists violating my VIII and

XIV Amendment rights.

MDS 5, ECF No. 7.

As noted above, the Court has taken judicial notice of the public records related to the charges filed and later convictions of Crawford on the same facts made the basis of this case. Those records reveal that Crawford was indicted for assault of a public servant for assaulting Lakeside Police Chief Pitts, Officer Huitt, Tarrant County Lt. Foust, and Fort Worth Sgt. Wedel in Case No. 1569405. Tarrant County App. 4-5, ECF No. 27-2. Crawford was also indicted for evading arrest in Case No. 1569406. *Id.* at 26. Both indictments were enhanced by numerous prior convictions (including aggravated assault with a deadly weapon in 2005, felony assault of public servant in 2014, and evading arrest/detention in 2014). *Id.* at 4-5, 26,

As part of a plea agreement, Crawford pleaded guilty on two counts of assault of a public servant (i.e., he admitted he assaulted both Chief Pitts and Officer Huitt). *Id*. at 12-13. Crawford also pleaded guilty to evading arrest/detention with a previous conviction (*id*. at 31-35), and he admitted his guilt as part of a plea in bar of prosecution of a separate offense—unlawful restraint of a child under 7. *Id*. at 25, 31-36. The court sentenced Crawford to concurrent 8-year sentences. *Id.* (Judgments of Conviction) at 6-7, 27-28.

Despite his admission of guilt to the offenses of assault on a public servant and evading arrest, Crawford has now sued each of the responding officers, claiming that they violated his civil rights. MDS 7, ECF No. 7. Undergirding his lawsuit is Crawford's inherently inconsistent assertion of innocence. MDS 1, ECF No. 7 (alleging that when Crawford asked Officer Huitt "Sir have I broken the law or done anything wrong today?" Officer Huitt replied, "No.").

Crawford now claims that his criminal defense attorney denied him access to police reports

10

and "frighten[ed]" him into taking the plea agreement. MDS 7, ECF No. 7. Instead of acknowledging that he pleaded guilty to assault of Chief Pitts and Officer Huitt and evasion of arrest/detention, he now primarily complains about Chief Pitts's and Officer Huitt's actions, accusing them of unlawful seizure/detention and excessive force. And, supplementing his version of events, Crawford alleges that "during the ensuing altercation," other defendants failed to stop or prevent others from violating his rights and struck him. MDS 1-5, ECF No. 7.

## III.    ANALYSIS

### A.    All Crawford's Fourth Amendment Claims are Barred by *Heck v. Humphrey*

Crawford's primary claims are for unlawful seizure/detention and excessive force during his arrest and detention. Compl. 5, ECF No.1; MDS 1-5, ECF No. 7. But, in his more definite statement, Crawford admits that he has not subsequently challenged his convictions for evading arrest/detention or assault of the officers involved in the detention. MDS 7, ECF No. 7. At their core, all Crawford's species of claims arising under the Fourth Amendment challenge his underlying criminal convictions, implicating the bar to a suit challenge set forth in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). *See Cormier v. Lafayette City-Par. Consol. Gov't*, 493 F. App'x 578, 583 (5th Cir. 2012) (per curiam) (applying *Heck* "to bar claims for excessive force, false arrest, malicious prosecution, and other claims of unlawful seizure")  (citing *Connors v. Graves*, 538 F.3d 373, 377-78 (5th Cir. 2008) (excessive force and unlawful seizure) and *Wells v. Bonner*, 45 F.3d 90, 94-96 (5th Cir. 1995) (malicious prosecution and false arrest)).

In *Heck v. Humphrey*, the Supreme Court clearly held that a plaintiff who has been convicted of a crime cannot bring a §1983 claim challenging the constitutionality of his conviction unless that conviction has been reversed, expunged, declared invalid, or called into question by

11

federal habeas corpus. 512 U.S. at 486-87. *Heck* bars claims for "unconstitutional conviction or imprisonment" as well as claims "for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid." *Id.* at 486. Therefore, unless his conviction has been overturned, a plaintiff cannot bring a §1983 claim if prevailing on that claim would imply that his conviction is invalid. *Arnold v. Town of Slaughter*, 100 F. App'x 321, 323 (5th Cir. 2004); *Harris v. Hase*, 4:20-cv-00440-O, 2020 WL 2766114, at *3 (N.D. Tex. May 28, 2020). The Court set out the analysis it would undertake once presented with the pertinent information about Plaintiff's criminal convictions:

> In ultimately resolving the potential applicability of *Heck*, the Court will have to consider the underlying factual basis of the charges of which Crawford was convicted and the particular factual basis of the civil claims he has asserted. See *Arnold v. Town of Slaughter*, 100 F. App'x 321, 323 (5th Cir. 2004) (noting that how *Heck* applies to an excessive force claim is not always clear) (citing *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir.1996)). Crawford acknowledges that he was convicted on December 20, 2019[,] of assault on a public servant and evading arrest in case numbers 1569405D and 1569406D. MDS 6, ECF No. 6. Crawford here seeks monetary relief for alleged excessive force by the defendants that may relate to his convictions for assault on a public servant and evading arrest. Heck may bar some or all of his excessive force claims. *See, e.g., Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (The "determination of whether [excessive force] claims are [*Heck*] barred is analytical and fact-intensive, requiring [courts] to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction.") (citing *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006)); *Hainze v. Richards*, 207 F.3d 795, 798 (5th Cir.2000) (noting that since plaintiff Hainze had been found guilty of aggravated assault in a criminal proceeding, the force used by the deputies to restrain him could not be deemed excessive); *Sappington v. Bartee*, 195 F.3d 234, 235 (5th Cir.1999) (holding that based on *Heck*, an excessive force claim brought under § 1983 is barred as a matter of law if brought by an individual convicted of aggravated assault related to the same events).

Op. and Order 6-7, ECF No. 10. Now that this Court has the pertinent public records from both

the Town of Lakeside and Tarrant County, it may engage and resolve the application of *Heck* to the facts of this case.

1.    Claims of Unlawful/False Arrest, Detention, or Seizure

Review of Crawford's pleadings reveals that he alleges claims for unlawful/false arrest, detention or seizure against four of the defendants, Pitts, Foust, Wedel, and Huitt. Were he allowed to proceed, Crawford's claims of unlawful/false arrest, detention, or seizure are on a collision course with his prior convictions of evading arrest/detention and assault of a public servant. Both crimes required proof of the lawfulness of the arresting officer's conduct, which Crawford admitted as part of his plea agreement. Tarrant County App. 16, 35, ECF No. 27-2; *see* Tex. Pen. Code Ann. § 22.01(b)(1) (stating that assault of a public servant occurs "while the public servant is lawfully discharging an official duty"), and § 38.04(a) (stating that evading arrest or detention occurs when a peace officer is "attempting lawfully to arrest or detain" the person). In response to the motion to dismiss of Pitts and Huitt, Crawford conceded in writing that his unlawful arrest/detention and illegal seizure claims were abandoned. Crawford writes: "Plaintiff therefore moves to abandon his claims of unlawful arrest/detention and illegal seizure as they lack merit, and as has been stated, put plaintiff's claim on a course to invalidation of his conviction." Resp. to Pitts/Huitt Mot. Dism. 6, ECF No. 36.   Accordingly, this Court will dismiss all Plaintiff's unlawful/false arrest, detention, or seizure claims under *Heck* as they necessarily would imply the invalidity of his underlying convictions for assault on a public servant and evading arrest or detention.

2.     Claims of Excessive Force

Crawford alleges excessive force claims against each of the seven defendants, in detail as

to Pitts, Wedel, and Huitt, and otherwise reciting as to each other defendant, that they "struck [Crawford] with closed fists." MDS 1-5, ECF No. 7. *Heck* does not uniformly operate as a per se bar on excessive force claims. *See Bush*, 513 F.3d at 498. The appropriate inquiry is "analytical and fact-intensive" and depends on whether "the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim." *Id*. at 497-98. For the reasons engaged below, the Court also finds that all of Crawford's excessive force claims are barred by *Heck*.

To avoid dismissal under *Heck*, a plaintiff must clear two hurdles. First, there must be no inherent inconsistency in a plaintiff's complaint and his underlying conviction. A plaintiff must not allege absolute innocence throughout the law enforcement encounter because such a position would necessarily be contradicted by a subsequent conviction for evading arrest/detention or assault on the responding public servants. *See Martin v. Roy*, 20-339-JWD-EWD, 2021 WL 1080933, at *11 (W.D. La. Mar. 18, 2021) (discussing *Heck's* analytical framework); *Daigre v. City of Waveland, Miss*., 549 F. App'x 283, 286-87 (5th Cir. 2013) (noting that Plaintiff's allegations that he did not physically resist or assault officers "relate to the entire arrest encounter, and not merely a discrete part of it. The result is dismissal under *Heck*.") (internal citation omitted). Second, if the first hurdle is successfully managed, a plaintiff must show that (1) his detention occurred in divisible stages and (2) the officer(s) exerted excessive force after he was restrained and compliant. *See Martin*, 2021 WL 1080933, at *11; *compare Bush*, 513 F.3d at 498 ("A claim of excessive force that is temporally and conceptually distinct from the conviction would not be barred by *Heck*"), *with Walter v. Horseshoe Enter*., 483 F. App'x 884, 887 (5th Cir. 2012) ("[A]ppellants' claims are not derived from distinct incidents. Their convictions for resisting arrest and their claim of use of excessive force stem from a single interaction"); and *Walker v. Munsell*,

14

281 F. App'x 388, 390 (5th Cir. 2008) (Appellant's claim was not that the officers used excessive force after he stopped resisting, but that he did not resist. "This type of excessive force claim is . . . barred by *Heck* in our circuit") (citations omitted).

> a.   *Crawford cannot proclaim his innocence in this action without challenging his convictions.*

When a § 1983 plaintiff asserts no fault or proclaims his innocence as to the entire arrest encounter, and not merely a divisible portion of it, the Fifth Circuit holds that the claim is necessarily inconsistent and inseparable from a related conviction and, therefore, *Heck*-barred. *See DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656-57 (5th Cir. 2007). In *DeLeon*, the Fifth Circuit held that *Heck* precluded a claim of excessive force because the complaint alleged a single violent encounter, throughout which an officer used excessive force on the "innocent" plaintiff, which implicitly challenged his aggravated assault conviction. 488 F.3d at 656-57; *see also Daigre*, 549 F. App'x at 286-87 (holding that plaintiff claiming innocence is *Heck*-barred from pursuing excessive force claim).

In describing the October 31, 2018 encounter with the seven officers, Crawford alleges that Officer Huitt told him he had not broken the law or done anything wrong. MDS 1, ECF No. 7. Crawford alleges that he later informed Chief Pitts of what Officer Huitt said, and Chief Pitts replied, "We'll think of something." *Id*. at 2. Crawford claims that each of the named officers used excessive force and that the TCSO Defendants failed to protect him from Chief Pitts and Officer Huitt. Crawford admits that he was convicted of both evading arrest/detention and assault of a public servant. *Id*. at 7.  But, he attempts to explain away his convictions, claiming that he was frightened into accepting a plea bargain. *Id.*

15

This case is analogous to *DeLeon* and *Daigre*. Crawford is proclaiming his innocence to the crimes of assault on a public servant and evading arrest (to which he pleaded guilty) in an effort to now sue the officers he was assaulting and evading. Because Crawford's excessive force claims are necessarily inconsistent with and inseparable from his related convictions, his excessive force claims are *Heck*-barred and should be dismissed. *See DeLeon*, 488 F.3d at 656-57; *see also Daigre*, 549 F. App'x at 286-87; *Martin*, 2021 WL 1080933, at \*11; and *Dotson v. Ricks*, 4:16-cv-674-Y, 2018 WL 3046250, at \*5-6 (N.D. Tex. June 20, 2018) (finding *Heck*-barred plaintiff's excessive force claim where plaintiff maintained he acted without fault during the police encounter) (citations omitted).

> b.    *This action involves one continuous detention encounter with no divisible stages.*

Additionally, and in the alternative, Crawford cannot show that (1) his detention occurred in divisible stages or (2) that there was a use of excessive force after he was restrained and complaint.

Crawford describes the initial encounter with Chief Pitts and Officer Huitt. MDS 1-3, ECF No. 7. When he discusses the TCSO and FWPD officers assisting the Lakeside police department officers, Crawford repeatedly mentions the "[e]nsuing altercation." *Id.* at 3-5. At no point in his complaint (or more definite statement) does Crawford allege that the arrest occurred in divisible stages. Nor does Crawford allege that his claims of excessive force against any defendant (looking at each individually) occurred after Crawford was restrained and compliant. For a fuller picture of the chronology of events, the Court has reviewed the Felony Arrest Warrant Affidavit—what Crawford describes as Officer Huitt's report. MDS5, ECF No. 7. That document reveals the

following:

Crawford's mother called for a welfare check. Tarrant County App. (Felony Arrest Warrant Affidavit) 3, ECF No. 27-2.  Officer Huitt responded and called TCSO for backup. *Id.* Officer Huitt and Crawford spoke in front of the mother's house. *Id.* TCSO arrived. *Id.*

Crawford started becoming agitated. *Id.* at 4.  Crawford's mother told officers that he had become verbally abusive, and she and a niece were afraid of Crawford's unpredictability. *Id.* Crawford furiously started yelling at his mother. *Id.*

Officer Huitt tried to get Crawford to leave, and Crawford started to leave. *Id.* Crawford drove down the street, but he stopped and walked back to his mother's house. *Id.* Crawford became angrier. *Id.* He was advised to leave or potentially be arrested for causing a disturbance. *Id.*

Crawford went to his truck, drove 200 yards away, and stopped. *Id.* As other officers arrived, Crawford backed up and again stopped in front of his mother's house. *Id.* Having refused his opportunity to leave, various officers told Crawford to exit his truck. *Id.* Crawford initially refused to get out of his truck, but he eventually did. *Id.*

Crawford then refused all commands to turn around and place his hands on the truck. *Id.* Officer Huitt deployed his Taser. *Id.* Crawford briefly bent down but then started flailing his arms, dislodging the probes. *Id.* Sgt. Wedel used his Taser, and Crawford tried to remove those probes. *Id.*

Screaming, Crawford charged Officer Huitt, knocking him back. *Id.* Officer Huitt defended himself and spun away. *Id.*

Crawford then ran inside his mother's house. *Id.* Chief Pitts, Deputy Bloom, and Lt. Foust pursued Crawford. *Id.* Chief Pitts and Lt. Foust were grappling with and trying to restrain Crawford. *Id.* Lt. Foust used pepper spray to try to gain control of Crawford. *Id.*

Undeterred, Crawford picked up a metal mirror and began using it like a weapon. *Id.* Officer Huitt wrenched the mirror from Crawford's hand, and he then used his Taser to drive stun Crawford.  *Id.*

Crawford somehow broke free and ran toward his truck. *Id.* at 5. When

17

Officer Huitt got to the truck, Officer Salazar had Crawford on the ground, where other officers were helping to handcuff him. *Id.*

Medstar was called to the scene, and they checked and released Crawford. *Id.* Officer Huitt then took Crawford to JPS [Hospital], where Crawford received mental health and medical treatment. *Id.* Crawford was released to JPS [Hospital] staff on a warrantless detention. *Id.*

During the altercation, several officers were assaulted and injured. *Id.* Crawford was charged with evading arrest/detention and assault of a public servant. *Id.* These charges were enhanced by two prior convictions for evading arrest/detention and one prior conviction for assault of a public servant. *Id.*

Crawford pleaded guilty to evading arrest/detention. Tarrant County App. 31-27, ECF No. 27-2. He pleaded guilty to assaulting Chief Pitts and Officer Huitt. *Id.*, at 12-17.

Analysis of Crawford's pleadings and the public record documents he references therein show that his excessive force claims against the defendants are not "temporally and conceptually" inseparable from his convictions for evading arrest/detention and assault on a public servant. Crawford's detention occurred in a continuous sequence (and not in divisible or discrete stages), and Crawford has not alleged that any defendant used excessive force after he was restrained and compliant. Therefore, the Court must dismiss all Crawford's excessive force claims against all defendants under *Heck*'s bar. *See Boyd v. Biggers*, 31 F.3d at 284, 284 (5th Cir. 1994) ; *Mitchel v. Bell*, No. 4:19-cv-00048-O-BP, 2020 WL 609294, at *2 (N.D. Tex. Jan. 9, 2020) ("Dismissal pursuant to *Heck* should be with prejudice, precluding a plaintiff from reasserting such claims unless he can demonstrate that the *Heck* conditions have been satisfied."), *rep. and rec. adopted*, 2020 WL 607064 (N.D. Tex. Feb. 7, 2020).

**B.     Application of Qualified Immunity to Remaining Claims Against All Defendants in an Individual Capacity**

18

All seven defendants assert that they are entitled to qualified immunity from the balance of Crawford's claims against them in their individual capacities. TCSO Defendants Mot. Dism. 18, ECF No. 26; Lakeside Defendants Mot. Dism. 14, ECF No. 28; Fort Worth Defendants Mot. Dism. 15, ECF No. 31.

Qualified immunity protects public officials from suit and liability unless their conduct violates a clearly established constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 743 (2011)).

When a defendant asserts qualified immunity, the burden then shifts to the Plaintiff to rebut this defense. *Saldana v. Garza*, 684 F.2d 1159, 1163 (5th Cir. 1982). "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648-49 (5th Cir. 2012).

The Court, when evaluating a qualified immunity defense, conducts a "well-known" two-prong inquiry or two-part test. *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 490 (5th Cir. 2001); *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016). "In order to overcome a qualified immunity defense, a plaintiff must allege a violation of a constitutional right, and then must show that 'the right was clearly established . . . in light of the specific context of the case.'" *Thompson*

19

*v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Furthermore, the Court may address these two elements in either order and need not proceed to the second where the first is resolved in the negative. *See Lytle v. Bexar Cnty. Tex., 56*0 F.3d 404, 409-10 (5th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Upon review of the balance of Crawford's remaining claims against all of the defendants in their individual capacities, the Court finds that they are entitled to qualified immunity because, as set forth in detail below, Crawford has failed to satisfy the first prong, pleading viable claims of the violation of a constitutional right.

### 1.    No Viable Bystander Liability Claims

Crawford alleges that Lt. Foust was aware that Chief Pitts violated his constitutional rights and "failed to exercise his authority as a[] civil servant to curtail Chief Pitts' violations of [his] constitutional rights." MDS 3, ECF No. 7. Similarly, as to defendant Wedel, Crawford alleges he "was aware of and failed to halt the violation of my constitutional rights by Chief Pitts . . .." MDS 4, ECF No. 7. Crawford also generally alleges that each of defendants Huitt, Bloom, Rodrigez, and Salazar failed to stop or prevent the actions of the other defendants in violating his constitutional rights. MDS 4-5, ECF No. 7. In essence, Crawford is attempting to assert bystander liability claims.

In *Hale v. Townley*, the Fifth Circuit recognized the doctrine of "bystander liability" in the excessive-force context, holding that "an officer who is present at the scene [of an arrest] and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." 45 F.3d 914, 919 (5th Cir. 1995), *abrogated on other grounds*,

*Kingsley v. Hendrickson*, 576 U.S. 389, 395-97 (2015)). A plaintiff must show that the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quotation and citations omitted).

Notably, an officer's mere presence during another officer's use of excessive force does not alone give rise to bystander liability. *Malone v. City of Fort Worth*, No. 4:09-cv-634-Y, 2014 WL 5781001, at \*16 (N.D. Tex. Nov. 6, 2014), *appeal dismissed sub nom., Malone v. Tidwell*, 615 F. App'x 189 (5th Cir. 2015) (citing *Whitley*, 726 F.3d at 646-47). For the duty to intervene to arise, "[t]he officer must have a reasonable opportunity to realize the excessive nature of the force and a realistic opportunity to stop it . . . ." *Id.* (citations omitted). In determining reasonableness, the Court should consider "both the duration of the alleged use of force and the location of the [person subjected to the force] relative to the allegedly bystanding officers." *Malone*, 2014 WL 5781001, at \*16 (citing *Vasquez v. Chacon*, No. 3:08-cv-2046-M, 2009 WL 2169017, at \*6 (N.D. Tex. July 20, 2009), *aff'd*, 390 F. App'x 305 (5th Cir. 2010)).

Here, Crawford has not met his burden to plead that Chief Pitts's or Officer Huitt's uses of force were excessive—given Crawford's behavior at the scene, as well as his admission of criminal culpability. Moreover, other than his conclusory statements recited above, Crawford has not pleaded any individualized facts that Foust, Wedel, Huitt, Bloom, Rodriguez, or Salazar (1) were present or nearby to another officer's use of force; (2) were specifically aware that any other officer was violating Crawford's constitutional rights; (3) had a reasonable opportunity to prevent the harm; and (4) chose not to act. Therefore, this Court finds that Crawford has failed to state

sufficient claims of bystander liability, and such claims must be dismissed.

2.    No Viable Claim of Denial of Medical Care

Crawford's allegations regarding denial of medical care are recited against defendants Pitts and Huitt. He claims that Pitts told the on-scene medic that "they were not going to take [Crawford] out of the cruiser" and directed the medic to leave. MDS 2, ECF No. 7. Crawford acknowledges, however, that Huitt drove him from the scene to JPS Hospital. *Id.* Crawford contends that Huitt later falsified his report about Medstar being allowed to treat him at the scene. MDS 4, ECF No. 7.

An arrestee's claim for denial of medical care is analyzed under the same standard applicable to pretrial detainees. *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472-73 (5th Cir. 1996) (citing *Bell v. Wolfish*, 441 U.S. 520, 523 (1979)). The arrestee's right to medical care derives from the Fourteenth Amendment. *Id.* at 473 (footnote omitted). In order to establish a violation of this constitutional right, a detainee must show that the defendants acted with deliberate indifference to his serious medical needs. *Lacy v. Shaw*, 357 F. App'x. 607, 609 (5th Cir. 2009). To make a claim of deliberate indifference, a plaintiff must demonstrate that the defendant official has actual subjective knowledge of a substantial risk of serious harm, but responds with deliberate indifference to that risk. *Id.(citing Hare v. City of Corinth*, 74 F.3d 633, 647-48 (5th Cir. 1996)). Such a finding of deliberate indifference, though, "must rest on facts clearly evincing 'wanton' actions on the parts of the defendants." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985); *see also Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

In the medical care context, a detainee must show that the defendant "refused to treat him,

22

ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Lacy*, 357 F. App'x at 609 (citing *Johnson*, 759 F.2d at 1238). A delay in providing medical care is not a violation of this constitutional right unless it results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  Allegations of negligence in the provision of medical care are not sufficient to maintain an action under 42 U.S.C. § 1983. *See, e.g., Daniels v. Williams*, 474 U.S. 327, 332 (1986) (concluding that the constitution "is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property"); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457, 458-59 (noting that deliberate indifference cannot be inferred from "negligent or even a grossly negligent response to a substantial risk of serious harm.")

With regard to his denial-of-medical care allegations, Pitts and Huitt note in their motion to dismiss that Crawford has confused and conflated a delay in medical care to an actual denial of medical care. Pitts/Huitt Mot. Dism. 18, ECF No. 28. In his response, Crawford denies this. Resp. to Pitts/Huitt Mot. Dism. 14, ECF No. 36. But review of Crawford's pleadings shows that he has conflated delay with denial. Crawford's pleadings and his response are permeated with judicial admissions that he was taken to JPS Hospital for evaluation and treatment once it was safe to transport him from the scene. MDS 2, ECF No. 7; Resp. to Pitts/Huittt Mot. Dism 14-15. ECF No. 36. Crawford admits that there was an ambulance at the arrest location. Resp. to Pitts/Huittt Mot. Dism. 14-15, ECF No. 36. Crawford's complaint  appears to essentially be that there was discussion between Pitts and Huitt about whether he would be transported by an ambulance or patrol car to JPS Hospital, and once there, whether he should be taken to the emergency room or

23

treated for mental health matters [which was actually a decision made by medical staff, not the defendants in this case]. *Id.* at 14-15. Crawford bemoans that Pitts purportedly instructed the MedStar personnel that the Plaintiff "would be taken to the hospital." *Id.* at 14. Crawford cannot credibly allege any harm resulting in the brief delay in not immediately evaluating/treating him while restrained in the back of Huitt's patrol car or being taken for a mental health care check as opposed to the emergency room [in the same hospital]. Delay in providing medical care does not rise to the level of a constitutional violation unless the delay results in substantial harm. *See Mendoza*, 989 F.2d at 195. Crawford's own admissions refute his claim of denial of medical care. Therefore, Crawford's denial of medical care claims must be dismissed for failure to state a viable claim of a constitutional violation.

### 3.    No Viable Claim Regarding Seizure of Car Keys

In his more definite statement, Crwaford alleges that while he was sitting in his truck, Pitts removed the car keys from the ignition and "seized my keys . . ." MDS 1, ECF No. 7. But, Crawford has provided no claim that such action(s) were not appropriate in the context of the lawful detention and arrest of Crawford. Instead, Crawford has subsequently conceded that Pitts's "actions in seizing [his] keys and phone and detaining Plaintiff were lawful." Resp. to Pitts/Huitt's Mot. Dism. 3, ECF No. 36. Thus, as Crawford has abandoned any claim against Pitts arising from the seizure of his keys, such claim is dismissed.

### 4.    No Viable Claims under the Fifth, Sixth, and Eighth Amendments

Crawford asserts claims under the Fifth Amendment. Compl. 5, ECF No. 1. The due process component of the Fifth Amendment applies only to federal defendants. *Abdullah v.*

*Paxton*, No. 1:20-cv-1245-RP, 2021 WL 5181614, at *3 n.2 (W.D. Tex. Nov. 8, 2021). As Crawford has named no federal government defendants on his claims, he cannot state claims under the Fifth Amendment and such claims must be dismissed.

Crawford also cites the Sixth Amendment in his pleadings. Compl. 5, ECF No. 1. The Supreme Court has recognized that the core of the Sixth Amendment right to counsel, applied to the States through the Fourteenth Amendment, is "the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial." *Kansas v. Ventris,* 556 U.S. 586, 590 (2009) (quoting *Michigan v. Harvey,* 494 U.S. 344, 348 (1990)). Crawford's factual claims do not state a violation of his Sixth Amendment right against any named defendant. Crawford's Sixth Amendment claim must be dismissed.

Crawford also repeatedly writes of a violation of his rights under the Eighth Amendment. Compl. 5, ECF No. 1. As the Fifth Circuit has explained, while the Eighth Amendment protects convicted prisoners in state custody, "[t]he constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare*, 74 F.3d at 639. Applying this principle in *Abbott v. Town of Livingston*, the district court held that the Eighth Amendment did not apply to an arrestee's claim for failure to provide medical treatment because he was a pretrial detainee. *Abbott v. Town of Livingston*, No. cv-16-00188-BAJ-EWD, 2018 WL 3430690, at *3, n.2 (M.D. La. Jul. 16, 2018). Because it is undisputed that Crawford was a pretrial detainee during the events made the basis of his complaint, his Eighth Amendment claims fail as a matter of law. Thus, Crawford's Eighth Amendment claims must be dismissed.

5.      No Claim under the Americans with Disabilities Act

In response to a question the Court included in the order for more definite statement, Crawford asserted that he was entitled to relief under the Americans with Disabilities Act ("ADA"), claiming it "applies to all police encounters with mentally ill suspects." MDS 8, ECF No. 7. Crawford alleges that Huitt knew he was suffering from a mental disorder, and that Pitts "had been dealing with me for years and was therefore aware of my disability." *Id.* at 8-9.

Title II of the ADA prohibits "disability discrimination in the provision of public services." *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011). Specifically, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. Contrary to Crawford's claim, however, the Fifth Circuit has expressly held that "Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life." *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000); *see also Munroe v. City of Austin*, 300 F. Supp. 3d 915, 931 (W.D. Tex. 2018) (rejecting claim by victim of police shooting for an accommodation of his mental disability under the ADA) (citing *Hainze*, 207 F.3d at 801). Furthermore, although the ADA authorizes claims against a "public entity," it does not authorize individual liability. *See Nottingham v. Richardson*, 499 F. App'x 368, 376 n.6 (5th Cir. 2012) (citations omitted).

For all of these reasons, Crawford's claims against any defendant under the Americans

with Disabilities Act must be dismissed.

### C.    No Official Capacity Claims/Dismissal of Such Claims

At the time of the issuance of the Opinion and Order of Partial Dismissal, the Court did not discern that Crawford had alleged any claims against the seven defendants in an official capacity. Although the Court asked in a question in the Order for more definite statement about a reference in the complaint to "polices, procedures, and regulations," Crawford's answer did not assert any claim against a defendant in an official capacity, and Crawford did not assert a claim against any of the municipalities that employed any defendant. MDS 8-9, ECF No. 7. Thus, the Court still does not discern that Crawford asserts any official capacity claims.

Furthermore, and in the alternative, to the extent Crawford's reference in his more definite statement to policies, procedures, and regulations in reference to Chief Pitts or Officer Huitt could be said to invoke official capacity claims, he has not otherwise pleaded any facts to support such claims. MDS 8-9, ECF No. 7. A suit against a municipal employee in his official capacity is treated as a suit against the municipality itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). It is not a suit against the employee personally, for the real party in interest is the municipality. *Id*. Thus, any claim against Pitts or Huitt as referenced in Crawford's more definite statement, would be treated as a suit against the Town of Lakeside.

Although a municipality, such as Lakeside, is subject to suit, a municipal government may not be held liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691 (1978). The Supreme Court, in *Monell*, emphasized that a local government entity cannot be held liable

under § 1983 on a *respondeat superior* basis:

> [T]herefore . . . a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government entity is responsible under § 1983.

*Id.* at 694. Thus, § 1983 liability attaches against a local government entity only "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Connick v. Thompson,* 563 U.S. 51, 49 (2011) (quoting *Monell,* 436 U.S. at 692) (internal quotation marks omitted); *City of Canton v. Harris,* 489 U.S. 378, 385 (1989) (liability "only where the municipality *itself* causes the constitutional violation at issue") (emphasis in original). An official municipal policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Prince v. Curry,* 423 F. App'x 447, 450 (5th Cir. 2011) (quoting *Connick,* 563 U.S. at 61).

Crawford has not provided any factual allegations whatsoever of a policy or custom against the Town of Lakeside. Thus, lacking any factual allegation of a policy or custom, Crawford has not sufficiently stated any claim of municipal liability. For all of these reasons, any claims against the defendants in an official capacity, or any claims of municipal liability, must be dismissed.

## IV.    ORDER

It is therefore **ORDERED** that the defendants' motions to dismiss for failure to state a claim (ECF Nos. 26, 28, and 31) are **GRANTED**. Plaintiff John Crawford's claims against defendants for unlawful/false arrest, detention, seizure, and excessive force are **DISMISSED** with

prejudice to being asserted again until the *Heck v. Humphrey* conditions are met.[2] Furthermore, all Crawford's remaining claims against Lee Pitts, Richard Foust, W. Wedel, Richard Huitt, Kelly Bloom, Ralph Rodriguez, and R. Salazar are **DISMISSED WITH PREJUDICE.**

       **SO ORDERED** this **16th day** of **February, 2022.**

Reed O'Connor

**UNITED STATES DISTRICT JUDGE**

---

[2] *See DeLeon*, 488 F.3d at 657 (noting the cited language is the preferred manner of dismissal in *Heck* cases) (citing *Johnson v. McElveen,* 101 F.3d 423, 424 (5th Cir. 1996)).